## Connellogue *against* English.

In an action of ejectment, when the title of the parties depends upon written evidence, it is error in the court to submit it to the determination of a jury.

ERROR to the Common Pleas of *Allegheny* county.

John English and others against Owen Connellogue. Ejectment for part of a lot of ground in Pittsburgh. The facts are fully stated in the opinion of the court.

*Metcalf*, for plaintiff in error.
*Woods*, for defendant in error.

The opinion of the Court was delivered by

Huston, J.—This case was presented to the court below in such manner as was calculated for any other purpose than to produce a clear understanding of the facts. I shall state the facts so as to present them in their order. John Scull in his lifetime owned a large lot of ground in Pittsburgh, bounded on Cherry Alley, and on Sixth Street; he, by articles of agreement dated 16th June 1827, agreed to sell to Oliver English a part of said lot described as follows: bounded by English's own lot 55 feet, thence parallel with Cherry Alley 30 feet, thence to Cherry Alley 55 feet, thence along Cherry Alley 30 feet to the place of beginning; to execute a deed clear of encumbrances as soon as the purchase money was paid; to deliver possession on the 1st of April then next. English to pay $400, viz.: $200 1st July 1828, and $200 1st July 1829, both with interest from the date of the article. This was duly executed in presence of two witnesses, but never recorded. At the bottom of the articles was written, " Only 55 feet back, and payments to be made in April 1829 and April following." This was said to be in the handwriting of John Scull; on the back of the articles were receipts for payments made to John Scull and to his executors. The payments continued to be made, in sums of $50 or less, down till in November 1829. When the article of agreement was read, neither the line at the foot of it nor receipts were read; nor did the plaintiff read his deed for this lot, though they had a deed and it was recorded. A witness was called, who testified that English went into possession and fenced his lot, that before his purchase the whole was a garden; again he said English took possession immediately after his purchase; and again he thought English entered within six months.

On the 19th of June 1827, just three days after the above articles were made, John Scull conveyed the rest of his lot by

[Connellogue v. English.]

courses and distances to Alexander Miller; by this deed, in selling the rest of the lot, he left only 53 feet from Cherry Alley for English. This deed to Miller was recorded 28th February 1828. On 19th June 1833 Miller and wife conveyed to Jeremiah Ivory; this deed was recorded 10th July 1833. The witnesses and the counsel throughout spoke of a sale by Ivory to Mitchel, but it is only in the statement of the title by the judge that we find that Ivory conveyed to Mitchel on 10th July 1833; that, Mitchel built a house, and Connellogue is his tenant. All these deeds of the defendant come to a point *fifty-three* feet from Cherry Alley. Defendants now offered to read from the records of the county a deed from Mary Scull, executrix and sole devisee of John Scull, to Oliver English, dated 12th of November 1829, and acknowledged the same day, though not recorded until 5th of June 1834. On this offer plaintiffs produced the original deed, which was read, and which conveys to English only *fifty-three* feet from Cherry Alley.

This ejectment was brought to recover from Mitchel or his tenant the ground between the line 53 feet from Cherry Alley and a line at the distance of 55 feet from that alley. There is endorsed on the deed from Mary Scull to Oliver English as follows:

" In addition to the within named 53 feet of ground sold to Oliver English, I hereby further grant and sell to him his heirs and assigns two feet of ground (or the whole balance of this lot, be the same more or less) which said lot may contain, and which cannot be certainly ascertained, the consideration mentioned in this indenture being in full thereof; as witness my hand and seal this third of May 1830.

[Two witnesses.]                                    MARY SCULL."

Although the deed was recorded as above stated, this covenant was not recorded. It was easy to have it acknowledged or proved; but this was never done; probably because it was worthless and useless. Ever since *Crotzer* v. *Russel* (9 *Serg. & Rawle* 78–80), followed by numerous cases, it has been settled that the deed being the last and most solemn act in the transfer of lands, corrects and controls the prior articles of agreement, and to this I know of no exceptions except mistake or fraud. The line written at the foot of that copy of the article which was in the possession of English, shows that he was early apprised that the deed would be as it is; and from the charge of the judge we learn that according to that, the interest of one year on the purchase money was thrown off on the settlement; this is pretty near conclusive proof that there was neither mistake nor fraud, but a change of quantity and lines for a consideration agreed on.

English never recorded his articles nor his deed until after Scull had sold the two feet to Miller, and Miller to Ivory, and Ivory to Mitchel by deeds all of which were recorded. But there was

[Connellogue v. English.]

something like an attempt to prove immediate possession, which totally failed. The deed to Miller was only three days after the agreement with English, who was not to obtain possession for nine months, and no proof that he did go into possession sooner. The recording of Miller's deed gave the legal right to him and to all who came under him; and if Mrs. Scull had conveyed the two feet in dispute instead of the unmeaning covenant above cited, it would not have devested the right of Miller or those claiming through him. It is plain that Mr. Scull made a mistake in selling two feet to two different persons, and honestly went to English and stated this, and the mode of rectifying this was agreed on, and this agreement has been carried into effect in a manner which the law had and does sanction. The testimony of the lawyer to whom English showed this, and who advised him that he might insist on 55 feet, makes the matter stronger. English did not reject and return the deed, but kept it, probably because of his agreement to take 53 feet on abatement of interest.

Some dozen of bills of exceptions were taken during the trial to the admission or rejection of testimony; no error is assigned on these. It is alleged as error that the court left the effect of these writings or some of them to the jury, and it was error; for the reasons above given the court ought to have instructed the jury that on the face of the writings, and the effect of the Recording Acts, the legal title was in the defendants. And it is not easy to see anything in the parol evidence, taken altogether, going to impair this title.

Our laws and our Recording Acts require titles to be written and recorded; and when so done, courts and juries cannot do worse than to depart from these, and unsettle rights and disturb property and possessions on vague remembrance, or total want of recollection as to facts which transpired long ago, or on witnesses supposing or thinking that such and such thing happened, or happened in a certain way.

There is evidence to show that even at 53 feet defendants for 5 or 6 feet are over the line between 3 and 6 inches at a back corner. If the parties think it worth while to go to the trouble and expense of another trial, this may be ascertained.

Judgment reversed, and *venire de novo* awarded.